FILED'11 FEB 14 11:35USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRIAN HAGEN,                                    Civil No. 10-6100-AA
                                                OPINION AND ORDER
          Plaintiff,

     vs.

CITY OF EUGENE, PETE KERNS,
JENNIFER BILLS, and TOM EICHHORN,

          Defendants.
_____

Jaime B. Goldberg
Attorney At Law
P.O. Box 86463
Portland, OR 97286
     Attorney for plaintiff

Jeffery J. Matthews,
Ben Miller
Harrang Long Gary Rudnick P.C.
360 East 10th Avenue, Suite 300
Eugene, OR 97401
     Attorneys for defendants

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Defendants filed a motion to dismiss against plaintiff's Complaint. Defendants' motion is denied.

## BACKGROUND

Plaintiff, Brian Hagen, an officer with the Eugene Police Department (EPD), contends he was subjected to a series of adverse employment actions in retaliation for engaging in protected speech in violation of his First Amendment rights by his supervisors, defendants Pete Kerns (Captain Kerns), Jennifer Bills (Lt. Bills), Tom Eichhorn (Sgt. Eichhorn), and the City of Eugene.

Plaintiff began working as a K-9 officer with the K-9 unit of the EPD in March 2004. Plaintiff's position as a K-9 officer involved deployment in potentially dangerous situations with members of the Special Weapons and Tactics (SWAT) team. In 2006, plaintiff became aware of various incidents involving negligent and unintended firearms discharges by SWAT team members while deployed with K-9 team members. The accidental shootings by the SWAT team were allegedly well known within all ranks of the EPD, including the upper levels. Plaintiff and his fellow K-9 officers first expressed their concerns regarding the SWAT team's unsafe firearms practices to their supervisor, Sgt. Eichhorn. On January 22, 2007, a Eugene Police Officer was shot in another accidental shooting by SWAT. This shooting occurred outdoors, in an area

Page 2 - OPINION AND ORDER

open to the public. Plaintiff and his fellow K-9 officers again expressed their concerns to Sgt. Eichhorn. In April or March 2007, a SWAT sergeant's rifle accidentally discharged near plaintiff, and the bullet allegedly ricocheted to an unknown location. This accidental discharge occurred in a residential neighborhood in the City of Eugene, in an area open to the public.

In May 2007, the K-9 officers agreed that plaintiff would serve as their spokesperson in discussing these safety concerns with the EPD supervisors. Plaintiff requested a meeting with sergeants and union officials to discuss SWAT safety practices. On May 26, 2007, SWAT was temporarily placed in a "stand down" so safety issues could be resolved. On June 13, 2007, plaintiff and other K-9 officers met with supervisors, including Sgt. Eichhorn, as well as the officer's union representative, Officer Tom Schulke. The K-9 officers once again expressed their concerns regarding SWAT safety practices. Although Captain Kerns temporarily shut down SWAT due to accidental shootings, plaintiff alleges that upon return to operation, there was no change in the practices that initially caused the safety concerns.

In April 2008, another meeting was arranged between SWAT and the K-9 officers to discuss safety concerns. The SWAT members were allegedly unaware of the K-9 officers' concerns because Sgt. Eichhorn failed to relay those safety concerns to SWAT.

Page 3 - OPINION AND ORDER

Prior to discussions regarding safety concerns, plaintiff was treated positively by Sgt. Eichhorn. On May 28, 2008, Sgt. Eichhorn informed plaintiff that he would be removed from the K-9 team. Sgt. Eichhorn then announced plaintiff's removal to the EPD and public. On July 28, 2008, EPD Chief Lehner reversed the decision to remove plaintiff from the K-9 team, and instead, on August 27, 2008, Sgt. Eichhorn placed plaintiff on a 90-day Performance Management Plan (PMP). Before plaintiff's first PMP was completed, on October 9, 2008, Sgt. Eichhorn placed plaintiff on a second PMP. On October 10, 2008, Chief Lehner permanently rescinded plaintiff's transfer and declared that plaintiff was "presently performing in a satisfactory manner." Neither of the other two K-9 officers were placed on PMPs.

In March 2009, Lt. Bills began an investigation, including interviewing plaintiff, his fellow K-9 officers, as well as Sgt. Eichhorn, regarding communication problems among team members. Lt. Bills ultimately removed plaintiff from the K-9 team due to "admissions" by plaintiff during his interview with Lt. Bills. Plaintiff was the only K-9 team member transferred.

## STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P.
56(c). Substantive law on an issue determines the materiality of
a fact. T.W. Electrical Service, Inc. v. Pacific Electrical
Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Whether
the evidence is such that a reasonable jury could return a
verdict for the nonmoving party determines the authenticity of a
dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).

The moving party has the burden of establishing the absence
of a genuine issue of material fact. Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986). If the moving party shows the absence
of a genuine issue of material fact, the nonmoving party must go
beyond the pleadings and identify facts which show a genuine
issue for trial. Id. at 324.

Special rules of construction apply when evaluating summary
judgment motions: (1) all reasonable doubts as to the existence
of genuine issues of material fact should be resolved against the
moving party; and (2) all inferences to be drawn from the
underlying facts must be viewed in the light most favorable to
the nonmoving party. T.W. Electrical, 809 F.2d at 630. In an
employment discrimination case, "if  a rational trier of fact
could, on all the evidence, find that the employer's action was
taken for impermissibly discriminatory reasons," summary judgment

for the moving party is inappropriate. <u>Wallis v. J.R. Simplot</u>,
26 F.3d 885, 889 (9th Cir. 1994).

DISCUSSION

Plaintiff alleges he was subject to a series of adverse
employment actions in retaliation for engaging in protected
speech; a violation of his First Amendment rights under the U.S.
Constitution. Defendants contend plaintiff has failed to allege
sufficient facts to state a claim for First Amendment
retaliation.

Analysis of a public employee's First Amendment retaliation
claim involves a sequential five-step inquiry:

> (1) whether the plaintiff spoke on a matter of public
> concern; (2) whether the plaintiff spoke as a private
> citizen or public employee; (3) whether the plaintiff's
> protected speech was a substantial or motivating factor
> in the adverse employment action; (4) whether the state
> had an adequate justification for treating the employee
> differently from other members of the general public;
> and (5) whether the state would have taken the adverse
> employment action even absent the protected speech.

<u>Eng v. Cooley</u>, 552 F.3d 1062, 1070 (9th Cir. 2009).

Plaintiff bears the initial burden of satisfying the first
three steps to properly allege a violation of his First Amendment
rights. Once the plaintiff has sufficiently established the first
three elements, the burden shifts to the defendant. Plaintiff's
satisfaction of the first three elements are disputed.

Page 6 - OPINION AND ORDER

A. WHETHER THE PLAINTIFF'S SPEECH ADDRESSED AN ISSUE OF PUBLIC
CONCERN

    To satisfy the first element, plaintiff must show that his
speech addressed an issue of public concern. The public concern
inquiry is purely a question of law. Eng, 552 F.3d at 1070. The
9th Circuit generally affords a liberal construction of "public
concern." Roe v. City & County of San Francisco, 109 F.3d 578,
586 (9th Cir. 1997). "Speech involves a matter of public concern
when it can fairly be considered to relate to 'any matter of
political, social, or other concern to the community.'" Eng, 552
F.3d at 1070 (quoting Johnson v. Multnomah County, Or., 48 F.3d
420, 422 (9th Cir. 1995)). To determine whether speech involves
public concern, courts generally assess the content, form, and
context of the speech.  Weeks v. Bayer, 246 F.3d 1231, 1235 (9th
Cir. 2001) (noting that the public or private nature of the
speech as well as the speaker's motive are relevant to the
determination). Conversely, speech that deals with "purely
private interests," "individual personnel disputes and
grievances," or would be of "no relevance to the public's
evaluation of the performance of governmental agencies" is
generally not of "public concern." Robinson v. York, 566 F.3d
817, 822 (9th Cir. 2009) (quoting McKinley v. City of Elroy, 705
F.2d 1110, 1114 (9th Cir. 1983)). However, the private nature of
the complaint is not dispositive. Eng, 522 F.3d at 1070.

Page 7 - OPINION AND ORDER

Defendants contend plaintiff's speech did not involve a matter of public concern. Defendants assert plaintiff's speech involved only private grievances over work conditions and his personal safety. Defendants also rely on the fact that plaintiff's speech was directed solely toward supervisors and his union representatives.

In 2006, plaintiff became aware of various incidents involving negligent and unintended firearm discharges by SWAT team members during deployment with K-9 team members. Neither party disputes the occurrence of these incidents. Plaintiff relies on the following evidence as proof of public concern: the accidental discharges by SWAT included a shooting in a residential neighborhood where the bullet was never found; three shootings occurred where police officers were accidentally shot, at least one of which occurred in an area open to the public; and accidental firearms discharges occurred during a bank robbery and while clearing property on a search warrant. Regardless of plaintiff's concern for his personal safety, accidental firearms discharges by police officers while in the field are inherently public. Members of the EPD are charged with the duty to maintain the peace and security of the City of Eugene. When those same members put the general public as well as fellow members of the police department in danger, a matter of public concern exists.

Moreover, plaintiff alleges that he continued to voice his safety concerns to fellow officers as well as supervisors due to a lack of response by the EPD management. Whether the EPD management responds adequately to safety concerns concerning the public as well as officers reflects upon the competency of the police department. As a matter of law, "competency of the police force is surely a matter of great public concern." Robinson, 566 F.3d at 822.

Therefore, I find that plaintiff's speech was a matter of public concern as a matter of law.

B. WHETHER PLAINTIFF SPOKE AS A PRIVATE CITIZEN OR A PUBLIC EMPLOYEE

To satisfy the second element, plaintiff must show that he spoke as a private citizen rather than a public employee. This determination is a mixed question of law and fact. Eng, 552 F.3d at 1071. "[When] public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006). In other words, "statements are made in the speaker's capacity as a citizen if the speaker 'had no official duty' to make the questioned statements, or if the speech was not part of 'performing the tasks the employee was paid to perform.'" Eng, 552 F.3d at 1071

Page 9 - OPINION AND ORDER

(quoting <u>Poser v. Lake Pend Oreille Sch. Dist. No. 84</u>, 546 F.3d
1121, 1127 n.2 (9th Cir. 2008).

Defendants contend the City's general policies, which are
applicable to all City employees, as well as EPD policies
specific to police officers, required plaintiff to report any
safety concerns. As a result, defendants argue that because
plaintiff's statements were within his official written duties as
a City employee, as well as an EPD officer, his statements were
made as a public employee rather than a private citizen.

Plaintiff disputes the fact that his speech was required as
part of his official job duties. Plaintiff argues that he was not
"reporting" any safety concerns because the accidental shootings
were well known within all levels of the police department.
Furthermore, plaintiff argues that even if his initial discussion
with Sgt. Eichhorn constituted "reporting," the alleged adverse
employment actions perpetrated by the defendants against him
occurred after many months of repeated discussions about the same
concerns. Moreover, plaintiff argues that notwithstanding the
written rules that may have required the reporting of unsafe
practices or working conditions, the actual practice of the City
and the EPD negated any such requirements. For example, plaintiff
alleges that the safety guidelines include safety committees;
however, such committees are rendered ineffectual and their work
routinely ignored or rejected by EPD supervisors. Plaintiff

Page 10 - OPINION AND ORDER

further alleges that SWAT has a reputation and history of
rejecting officer safety analysis, and the City and EPD have done
little to discourage the resulting unsafe practices.

Defendants rely solely on plaintiff's formal job
description. However, the duties listed in a formal written job
description are "neither necessary nor sufficient to demonstrate
that conducting the task is within the scope of the employee's
professional duties for First Amendment purposes." <u>Garcetti</u>, 547
U.S. at 425 ("Formal job descriptions often bear little
resemblance to the duties an employee actually is expected to
perform."). As the record stands, I find many issues of material
fact regarding the scope and content of plaintiff's job
responsibilities and therefore am unable to rule as a matter of
law.

C. WHETHER PLAINTIFF'S PROTECTED SPEECH WAS A SUBSTANTIAL OR
MOTIVATING FACTOR IN THE ADVERSE EMPLOYMENT ACTION

Defendants contest the third element of the test on two
grounds. First, defendants contend plaintiff failed to produce
evidence indicating a retaliatory motive. Defendants allege
plaintiff was transferred from his K-9 unit as a result of his
inability to communicate effectively with his supervisor and
thereby created serious safety issues. Second, defendants argue
that regardless of plaintiff's evidence, plaintiff's motive was
previously litigated and decided in favor of defendants during a

prior arbitration proceeding, consequently providing preclusive effect to the issue of a retaliatory motive.

Whether plaintiff's protected speech was a substantial or motivating factor in the adverse employment action is purely a question of fact. Plaintiff must sufficiently allege that defendants retaliated against plaintiff for plaintiff's exercise of his First Amendment rights. Both arguments presented by the defendants, however, focus solely on one adverse employment action, plaintiff's transfer by Lt. Bills; while plaintiff's complaint alleges a series of adverse employment actions taken by the defendants.

Plaintiff contends that a series of adverse employment actions were taken in retaliation for engaging in protected speech in violation of his First Amendment rights. Plaintiff relies on the fact that prior to plaintiff's discussion regarding the accidental shootings by SWAT and the lack of response by the EPD, he had no problems with Sgt. Eichhorn regarding his work performance. Plaintiff alleges he and his other K-9 team members first discussed their concerns about the accidental shootings with their supervisor, Sgt. Eichhorn, following various incidents in 2006. Following other incidents in 2007, plaintiff and fellow team members repeatedly expressed safety concerns to Sgt. Eichhorn.

In April 2008, SWAT and K-9 officers met to discuss safety
concerns. Plaintiff alleges that during the meeting, the SWAT
members expressed unawareness of the K-9 officers' safety
concerns, as Sgt. Eichhorn had allegedly not relayed the message.
Following the discussions, plaintiff was told that he would be
removed from his K-9 team and was consequently placed on two
successive PMPs. Plaintiff alleges that he was the only member of
the K-9 team subject to a PMP. Plaintiff further stipulates that
his fellow K-9 officers were unaware of any performance issues
regarding plaintiff.  Moreover, plaintiff relies on a statement
made by former Chief Lehner, one day after the implementation of
plaintiff's second PMP, which stated that plaintiff was
"presently performing in a satisfactory manner." In October 2008,
former Chief Lehner permanently rescinded the transfer of
plaintiff.  Furthermore, the record shows that following the
completion of the second PMP, Lt. Bills issued plaintiff a new
dog, indicating that plaintiff had successfully completed his
PMP.[1] In March 2009, plaintiff was removed from the K-9 team by
Lt. Jennifer Bills, with the approval of Captain Kerns. Plaintiff
alleges this approval was consistent with Captain Kern's previous
statement that EPD is "built to support its supervisors."

_____

[1]Although not mentioned in plaintiff's briefs, this
information was found in the arbitrator's background and facts.
Arbitrators Opinion & Award, Defendant's Exhibit 5 at 8.

In addition, plaintiff points to statements made during Lt.
Bills' investigatory interviews as evidence of retaliation. Lt.
Bills based her decision to transfer plaintiff on plaintiff's
admissions, allegedly indicating an unwillingness and inability
to strengthen his communication with Sgt. Eichhorn. Plaintiff
argues that the transcripts reveal a hesitancy to communicate by
all members of the K-9 team, instead of just plaintiff's
hesitancy. Although Lt. Bills allegedly relied upon plaintiff's
admission that he spoke to Sgt. Eichhorn as minimally as
possible, plaintiff alleges the same sentiment was echoed
throughout the other interviews of other K-9 team members. For
example, Officer Rosales, a K-9 team member, expressed discomfort
when speaking with Sgt. Eichhorn, while Officer Hubbard, another
K-9 team member, stated that the three K-9 officers were "walking
on eggshells with Sgt. Eichhorn" and that he would not feel
comfortable speaking with Sgt. Eichhorn if he had a problem with
his dog. Furthermore, plaintiff directs the court to statements
made by Sgt. Eichhorn. When asked whether the trust and
communication could return to the team members, Sgt. Eichhorn
directly responded, "no." Plaintiff contends Sgt. Eichhorn made
additional statements indicating that he thought the K-9 officers
were liars and untrustworthy.

Moreover, plaintiff argues that the prior arbitration
proceeding is not dispositive of Lt. Bills' motives, and that the

Page 14 - OPINION AND ORDER

issues addressed during the arbitration are not identical to the
issues at bar. Plaintiff states that the question in the
arbitration matter was whether management had a right to transfer
plaintiff pursuant to the parties' contract and collective
bargaining law. Defendants argue that whether the collective
bargaining agreement between the City and plaintiff's union was
violated required the arbitrator to determine whether plaintiff's
transfer resulted from retaliation against plaintiff for speaking
out concerning SWAT safety concerns. Thus, defendants argue the
issue of retaliation was essential to the arbitrator's final
decision.

Plaintiff further argues that regardless of the arbitrator's
decision, plaintiff did not have a full or fair opportunity to be
heard during arbitration. Issue preclusion prevents a party from
relitigating issues that were actually litigated and determined
in a prior action if the determination was essential to the final
judgment. Nelson v. Emerald People's Util. Dist., 318 Or. 99,
103-04, 862 P.2d 1293, 1296-97 (1993). Plaintiff argues that
several weeks prior to the arbitration, plaintiff requested the
transcripts from Lt. Bills' investigatory interviews. The
transcripts were not delivered, however, until several weeks
after the hearing. Plaintiff argues that Lt. Bills based her
transfer decision on admissions by plaintiff during an
investigatory interview. By not providing the transcripts upon

request, plaintiff asserts that the City prevented the effective cross-examination of Lt. Bills when she testified regarding plaintiff's alleged admissions during the interview. Thus, the foundation of the arbitrator's decision was incomplete.

Viewing the facts in the light most favorable to the plaintiff, the court finds it difficult at this time to resolve all reasonable doubts as to the existence of genuine issues of material fact against defendants. Defendants addressed only the final transfer of plaintiff from his K-9 team, without any reference to plaintiff's additional complaints of retaliation. As a result, there are several remaining issues of material fact. As a matter of law, the court is unable to determine whether plaintiff's protected speech was a substantial or motivating factor in the adverse employment actions.

## CONCLUSION

Defendants' summary judgment motion (doc. 22) is denied. IT IS SO ORDERED.

Dated this $\underline{//}$ day of February 2011.

Ann Aiken
United States District Judge

Page 16 - OPINION AND ORDER